IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA PACE, ) | |
| ) | |
| Plaintiff, ) | **2:23-CV-555** |
| ) | |
| v. ) | |
| ) | **JUDGE MARILYN J. HORAN** |
| PLUM BOROUGH SCHOOL DISTRICT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

On April 3, 2023, Lisa Pace, filed suit against Defendant, Plum Borough School District. (ECF No. 1). On August 18, 2023, Ms. Pace filed an Amended Complaint seeking relief pursuant to 29 U.S.C. § 621 et seq. (Age Discrimination in Employment Act, or "ADEA") for age discrimination and constructive discharge. Presently, before the Court, is Defendant's Motion to Dismiss Ms. Pace's Amended Complaint. (ECF No. 15). The Motion to Dismiss has been fully briefed and is ripe for decision.

For the reasons below, Defendant's Motion to Dismiss will be granted in full. The Plaintiff's ADEA claims for age discrimination and constructive discharge as well as her claim for compensatory damages will be granted. Plaintiff's Amended Complaint will be dismissed with leave to amend.

### I. Statement of Facts

Plaintiff, Lisa Pace, began working for Defendant, Plum Borough School District ("Plum"), as a certified school nurse ("CSN") on January 3, 1995. (ECF No. 16, at ¶ 8). Around August 31, 2001, Ms. Pace began to struggle with poor ventilation at the schools where she worked because it exacerbated her asthma. (*Id.* ¶ 10-11). As a result, Ms. Pace's doctor provided Plum with a

written request that stated Ms. Pace should have access to air exchanges, such as an open window. (*Id.*). Plum complied with the requested accommodation. (*Id.*). During the 2019/2020 school year, Assistant Superintendent of grades 9-12, Denise Sedlacek ("Ms. Sedlacek"), became Ms. Pace's supervisor. (*Id.* ¶ 14).

From November 30, 2021, to March 2, 2022, Ms. Pace was on leave under the Family Leave and Medical Act ("FMLA") due to back and hip pain. (*Id.* ¶ 18). While on leave, CSN Stephanie Bono, who Ms. Pace alleges was significantly younger than her, replaced her at Center Elementary. (*Id.* ¶ 17). In February 2022, Ms. Pace emailed Ms. Sedlacek, asking to extend her leave under the FMLA. (*Id.* ¶ 19) In response, Ms. Sedlacek stated, "I thought you might love this enough that you would consider retiring. Keep me posted if you change your mind." (*Id.*). Ms. Sedlacek subsequently approved the FMLA extension request. (*Id.* ¶ 21).

In the Spring of 2022, there were five CSNs in the Plum Borough School District. (*Id.* ¶ 22). Three of the CSNs, Tina Jagodzinski, Donna Murphy, and Ms. Pace, were over the age of forty; two of them, Lyndsay Klipa and Ms. Bono, were under the age of forty. (*Id.* ¶ 22).

Ms. Pace alleges that, after Ms. Sedlacek sent the email referring to retirement, she orally informed the three older CSNs that there would be a "shake-up" in the nursing department, and that they would be transferred to work at other schools within the district. (*Id.* ¶ 23). The two younger CSNs were not being transferred. (*Id.*). Ms. Pace alleges that Plum has a history of transferring employees who reach retirement age as a way to force them to retire. (*Id.* ¶ 25). In support of this, she avers that former teachers, Gina Herrington, Debbie Nance, and Colleen Spears were all transferred by Plum when they reached retirement age. (*Id.*).

In April 2022, Ms. Sedlacek told Ms. Pace that she would be transferred from her position at Center Elementary to Oblock Junior High School ("Oblock"). (*Id.* ¶ 26). Ms. Pace was sixty-three (63) years old at the time she was informed of the transfer. (*Id.* ¶ 51). Ms. Pace alleges that Ms. Sedlacek stated that the transfer would be "better for her [Ms. Pace's] back." (*Id.*). Ms. Pace avers that she never requested any sort of age-related accommodation and that Ms. Sedlacek's comment infers the transfer was due to Ms. Pace's age. (*Id.*). The nurse's office in Oblock was known to have an intermittent and putrid smell of sewage. (*Id.* ¶ 27). Further, the nurse's office at Oblock had no windows or means of ventilation. (*Id.*). Plaintiff had sometimes worked at Oblock as a substitute CNS when needed, and she alleges that her time there "exacerbated her asthma." (*Id.* ¶ 29).

On April 20, 2022, pursuant to the Plum Borough Employment Agreement, Ms. Pace requested a written explanation for her transfer to Oblock. (*Id.* ¶ 30). Plum responded on April 22, 2022, stating, "your CSN skills are needed in another building." (*Id.* ¶ 31).

On May 9, 2022, Ms. Pace, Ms. Murphy, and Ms. Jagodzinski met with their school principals, Ms. Sedlacek, and union representation from the Plum Borough Education Association ("PBEA"), to discuss the transfers and "the litany of negative impacts on [Ms. Pace]." (*Id.* ¶ 33). During this meeting, Ms. Pace alleges that she told the attendees that she believed the transfer was patently discriminatory and based on her age. (*Id.*).

Ms. Pace alleges that the transfer was punitive because Oblock was a junior high school, while throughout her career, she primarily worked with elementary school children. (*Id.* ¶ 32). Additionally, Ms. Pace alleges that the transfer would require her to regularly walk 50 yards to Holiday Park Upper-Elementary School ("Holiday Park") to fill-in, because Kristin Lewis, the CNS assigned to Holiday Park, was regularly absent. (*Id.* ¶ 42).

3

Ms. Pace alleges that, on May 14, 2022, Plum took further actions to force her resignation by confiscating her virtual google drive containing student health information. (*Id.* ¶ 34). On July 22, 2022, Ms. Pace received a formal notice of transfer to work at Oblock. (*Id.* ¶ 39). Ms. Pace retired on August 2, 2022. (*Id.* ¶ 36). Ms. Pace alleges that she retired because of physical and health related issues resulting from the working conditions at Oblock. (*Id.* ¶ 44).

As a result of the alleged forced transfer, Ms. Pace avers she suffered tangible economic loss in the form of lost back pay and benefits, substantial emotional and physical distress, embarrassment and humiliation, and pain and suffering. (*Id.* ¶ 57).

**Relevant Legal Standards**

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a prima facie case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

II.   **Discussion**
    A.  **Age Discrimination in Employment Act – Negative Employment Action Claim**

Plum argues that Ms. Pace did not plead sufficient facts for which relief can be granted under the ADEA because there was no adverse employment action made against her. (ECF No. 16, at 6). Ms. Pace argues that she pled sufficient facts to establish a prima facie case under the

ADEA because the transfer to Oblock created physical hazards, performance challenges, and health issues for her. (ECF No. 13, at ¶ 53).

Employment discrimination claims under the ADEA are analyzed under the burden shifting framework established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-04 (1973). Under this framework, Plaintiff bears the burden of establishing a prima facie case of age discrimination, which requires establishing that: (1) the plaintiff was forty years old or older at the time in question; (2) defendant took an adverse employment action against her; (3) plaintiff was otherwise qualified for her position; and (4) the adverse employment action occurred under circumstances which "raise and inference" of unlawful age discrimination. *Id.* The ADEA defines an adverse employment action as discrimination with respect to the "compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). An adverse employment action requires "a significant change in employment status, such as hiring or firing, failing to promote, reassignment with significantly different responsibilities, or decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The action must be objectively tangible and material, "as opposed to conduct that the employee generally finds objectionable." *Nelson v. Upsala Coll.*, 51 F.3d 383, 387-88 (3d Cir. 1995).

A transfer can be considered an adverse employment action "sufficient to satisfy the third element of a prima facie case when it is shown to be detrimental or undesirable in some objective way." *Daniels v. School Dist. of Philadelphia*, 982 F. Supp.2d 462, 479 (E.D. Pa. 2013) (citing *Jones v. School Dist. Of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999)). The factual circumstances must show that there "[was] a reduction in other terms, conditions, or privileges of employment." *McGrenaghan v. St. Denis Sch.*, 979 F. Supp. 323, 326 (E.D. Pa. 1997). *See also Torre v. Casio, Inc.*, 42 F.3d 825, 831 n.7 (3d Cir. 1994) (holding that the plaintiff created a

material fact regarding his transfer by alleging that the new position, despite not losing pay or benefits, was a "dead-end job" which he could be fired from at any moment).

There does not seem to be a dispute over whether Ms. Pace was a member of the protected class (prong 1), or that she was qualified for her position under the ADEA (prong 3). As such, the Court will first address whether Ms. Pace sufficiently plead facts to infer an adverse employment action (prong 2). Ms. Pace alleges that her transfer to Oblock constitutes an adverse employment action for three recognizable reasons: (1) the new assignment required her to care for high school students instead of elementary school students, with whom she had worked for over 20 years; (2) she would have to regularly walk 50 yards between Oblock and Holiday Park to care for children at both schools; and (3) Oblock did not have any windows in the nurse's office and thus lacked open-air exchanges. (ECF No. 13, at ¶¶ 27, 32 42).

As for the first reason, Ms. Pace does not sufficiently plead facts to allege an adverse employment action. Caring primarily for junior high school students instead of elementary school students does not change her pay, benefits, status, duties/responsibilities or harm her career opportunities. Additionally, Ms. Pace failed to sufficiently plead that caring for junior high school students was an inferior position. Ms. Pace had sometimes filled in at Oblock throughout her employment. (*Id.* ¶ 29). Seemingly, the only change in responsibilities due to her transfer to Oblock was that she would have been providing her services to older students, which she had historically done on occasion. Further, a person who holds a valid Pennsylvania certificate as a School Nurse is qualified to care for students at various levels of education including elementary, middle, and secondary levels. *CSPG 80 - School Nurse (PK-12)*, Pa. Dep't

Educ.[1] Thus, as a licensed CSN, Ms. Pace was qualified and capable to care for students from preschool to twelfth grade. As such, in this respect, Pace has not plead an adverse employment action.

As for the second reason, that the transfer would require Ms. Pace to walk 50 yards between Oblock and Holiday Park to care for students when the nurse at Holiday Park is frequently absent, Ms. Pace does not sufficiently plead enough facts to establish an adverse employment action. 28 Pa. Code § 23.553 provides that the "school administrator, in determining the number of pupils to be served by a school nurse, shall consider the number of schools, distance between schools, travel difficulties, and special health needs of the area." The 50-yard distance between the school locations suggests an inconvenience rather than any significant change in responsibilities, terms, conditions, or privileges of employment. As such, this circumstance does not establish an adverse employment action.

Turning to the third reason, that Oblock had no open-air exchanges as prescribed by Ms. Pace's doctor and as previously accommodated by Plum, Ms. Pace has not sufficiently pled an adverse employment action. Ms. Pace alleges that in 2001 she provided Plum with a written doctor's request, which explained that Ms. Pace needed access to open-air exchanges such as windows due to her asthma. (ECF No. 13, at ¶ 11). Ms. Pace further alleges that Plum accommodated her request. (*Id.*). In April 2022, Ms. Pace was informed of her transfer to Oblock, which was "notorious for having an intermittent and putrid smell of sewage," and had no windows or other means of ventilation. (*Id.* ¶¶ 26, 27). If Plum, as of July 2022, knew about the 2001 letter and Ms. Pace's prior accommodations when it transferred her, it would be

---

[1] The qualifications for a licensed CSN according to the PA Department of Education can be found at the following URL: https://www.education.pa.gov/Educators/Certification/Staffing%20Guidelines/Pages/CSPG80.aspx, (last modified Mar. 1, 2023).

plausible that a reasonable person would find the failure to continue her accommodation detrimental in some objective way. Thus, such transfer could qualify as an adverse employment action at this stage. However, Ms. Pace does not sufficiently plead that, at the time it made the transfer decision, that Plum was aware of the letter and accommodation, nor that Plum was aware of the conditions at Oblock that required accommodation for Ms. Pace. Ms. Pace pleads that she sometimes filled-in as the CSN at Oblock, and that during such times she struggled with the smells in the nurse's office due to the lack of open-air exchanges. (*Id.* ¶ 29). Ms. Pace does not allege in her Amended Complaint that, as of July 2022, Plum was aware that she had health complications when she filled-in at Oblock. Further, while Ms. Pace alleges that, when she met with her school principal, Ms. Sedlacek, and the PBEA about the transfer, she discussed "the litany of negative consequences on [her]," she does not plead that she advised them about the 2001 letter and her accommodation. (*Id.* ¶ 33). As such, Ms. Pace has not sufficiently plead an adverse employment action to support her age discrimination claim.

To establish the fourth prong of the prima facie case for age discrimination, Ms. Pace must plead sufficient facts to establish that the adverse employment action occurred under circumstances which "raise an inference" of unlawful age discrimination. As support that her transfer was because of her age, Ms. Pace alleges multiple events. First, Ms. Pace alleges that when she requested to extend her FMLA leave in February 2022, Ms. Sedlacek responded with an email that stated, "I thought you might love this enough that you would consider retiring. Keep me posted if you change your mind." (*Id.* ¶ 19). Second, Ms. Pace alleges that shortly after the email, she was informed by Ms. Sedlacek that the three CSNs over the age of 40 would be transferred to different schools within the district. The two CSNs who were younger than 40, Lyndsay Klipa and Ms. Bono, were not transferred. (*Id.* ¶ 22). Next, Ms. Pace alleges that in

9

April 2022, when Ms. Sedlacek referenced that the transfer would be "better for her back," Ms. Pace believed the transfer was due to her age. (*Id.* ¶ 26). Ms. Pace pleads that she had never requested any accommodations for any age-related ailments. (*Id.*) She further avers that the mention of her back displays the transfer was due to her age. (*Id.*). Finally, Ms. Pace alleges that Plum has a history of transferring older employees to undesirable positions to force them to retire. Ms. Pace alleges that Plum transferred three teachers to different positions once they reached retirement age, to try to force them to retire. (*Id.* ¶ 25).

The Court will first address the allegation that Plum has a history of transferring older employees. Plum argues that Ms. Pace's allegation, that Plum's transfer of the three former teachers suggests a pattern of age discrimination, cannot be considered in determining whether the transfer arises under circumstances that give rise to an inference of discrimination because the teachers were not similarly situated to Ms. Pace, and they were not outside the protected class. (ECF No. 19, at 4). The Third Circuit has held that in establishing the fourth prong of an ADEA claim, the inference can be drawn from a demonstration that a similarly situated employee outside of the protected class was not treated similarly. *Fiorentini v. William Penn School District*, 665 Fed. Appx. 229 (3d Cir. 2016). Some factors that are considered in determining whether a plaintiff is similar to a comparator include: "whether the employees dealt with the same supervisor, had the same job description, were subject to the same standards, [or] engaged in the same conduct." *Ellis v. Bank of New York Mellon Corp.*, 2020 WL 2557902, at *11 (W.D. Pa. 2020). Teachers and CSNs hold different positions in the Plum School District requiring different levels of education, job functions, and responsibilities. As such, the alleged comparator evidence cannot be considered in assessing whether the alleged adverse action was made because of age.

As to the comment made by Ms. Sedlacek to Ms. Pace regarding Ms. Pace's back, Ms. Pace had taken FMLA leave to address issues she had with her hip and back. (ECF. No 13, at ¶ 18). Ms. Pace alleges no facts to relate that comment to Ms. Pace's age. Such comment does not support that the transfer was made because of age.

That leaves Ms. Pace's other two alleged events, the email which referred to Ms. Pace possible retirement, and the fact that only the three CSNs over 40 were transferred while the two younger CSNs remained in their positions. At this stage, considering both events, it is plausible that this is enough to "raise an inference" that the alleged adverse action was made because of Ms. Pace's age. As such, and based upon these two allegations, Ms. Pace has sufficiently plead enough facts to establish the fourth prong of her ADEA claim.

As Ms. Pace failed to plead sufficient facts to establish an adverse employment action was made against her by Plum, Plum's Motion to Dismiss will be granted. As the Court cannot say that amendment would be inequitable or futile, Ms. Pace will be granted leave to amend regarding her ADEA claim for age discrimination.

### B. Age Discrimination in Employment Act – Constructive Discharge Claim

Within Count I of the Amended Complaint, Ms. Pace also alleges that her transfer to Oblock and Plum's "unwillingness to consider the health and performance ramifications of the transfer, without providing a reasonable alternative, constructively terminated [her]." (*Id.* ¶ 53). Plum argues that there are no facts to support or reasonably infer that Ms. Pace's transfer placed her in a position "so intolerable that a reasonable person would resign." (ECF No. 16, at 10).

Constructive discharge occurs when the workplace discrimination against an employee rises to the point that working conditions become so intolerable that a reasonable person in the

employee's position would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004). "Intolerability" is assessed by an objective standard, "whether a 'reasonable person' in the employee's position . . . would have no choice but to resign." *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (quoting *Bliston v. St. John's College*, 74 F. 3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds*, *Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998)).

The United States Court of Appeals for the Third Circuit uses an "objective test in determining whether an employee was constructively discharged from employment: [asking] whether 'the conduct complained of would have the foreseeable result'" of leading a reasonable employee facing that level of difficulty in their working conditions to resign. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1079 (3d Cir. 1992) (quoting *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 887-88 (3d Cir. 1984)). In making this determination, "[a]n employee is protected from a calculated effort to pressure her into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by her co-workers. She is not, however, guaranteed a working environment free of stress." *Id.* at 1083 (quoting *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).

Here, and as discussed above in finding no adverse action, Ms. Pace does not allege enough facts to establish a constructive discharge claim. The allegations concerning the new responsibilities the transfer would impose upon her, specifically, caring for the older children and having to walk 50 yards between Oblock and Holiday Park, are inconveniences at most and do not rise to the level of what a reasonable person would consider intolerable. As to the asthma accommodation, Ms. Pace does not sufficiently plead that Plum knew of the 2001 letter or Ms. Pace's request for accommodation related to the circumstances at Oblock when it made its

decision to transfer her. Ms. Pace alleges that the accommodation began in 2001, but that she sometimes filled-in at Oblock. As such, Ms. Pace does not sufficiently plead that her transfer to Oblock would have the foreseeable result of leading a reasonable employee facing the same level of difficulty in their working conditions to resign.

As Ms. Pace does not plead sufficient facts to establish her ADEA constructive discharge claim, Plum's Motion to Dismiss will be granted. As the Court cannot say that amendment would be inequitable or futile, Ms. Pace will be granted leave to amend regarding her constructive discharge claim.

### III.     Compensatory Damages

In her Amended Complaint, Ms. Pace seeks compensatory damages. (*Id.* ¶ 3). Plum argues in their Motion to Dismiss that Ms. Pace cannot recover compensatory damages because the ADEA does not allow for such recovery. (ECF No. 16, at 11). Ms. Pace conceded that non-pecuniary compensatory losses such as pain and suffering, mental anguish, and inconvenience are not recoverable under the ADEA. (ECF No. 18, at 10). As such, Ms. Pace's claims for compensatory damages will be dismissed, without leave to amend.

### IV.     Conclusion

For the reasons stated above, Plum's Motion to Dismiss will be granted in full. Ms. Pace's ADEA claims for age discrimination and constructive discharge will be dismissed, with leave to amend. As for the matter of compensatory damages, Plum's Motion to Dismiss will also be granted. Ms. Pace's claim for compensatory damages will be dismissed, without leave to amend.

Ms. Pace may file a Second Amended Complaint by December 12, 2023. If Ms. Pace files a Second Amended Complaint, Plum shall file their responsive pleadings within 14 days of Ms.

Pace's filing of her Second Amended Complaint. If no Second Amended Complaint is filed by December 12, 2023, then the case will be dismissed with prejudice and the clerk will mark the case as closed. An appropriate Order will follow.

DATE: _____11/28/2023_____          *Marilyn J. Horan*
                                                    Marilyn J. Horan
                                                    United States District Judge